FILED
 2010 Mar-29  AM 09:42
 U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROGER CLINT BRADSHAW, and<br>MELISSA FAYE BRADSHAW,<br><br>    Plaintiffs,<br><br>vs.<br><br>COLLECTION BUREAU OF THE<br>HUDSON VALLEY, a foreign<br>corporation, OSEETAH CAPITAL,<br>L.L.C., a foreign limited liability<br>corporation, and EXPERIAN<br>INFORMATION SOLUTIONS, INC.,<br>a foreign corporation,<br><br>    Defendants. | CASE NO. 2:09-cv-01149-SLB |

## MEMORANDUM OPINION

This case is currently before the court on a Joint Motion to Dismiss, filed by defendants Collection Bureau of the Hudson Valley ("CBHV") and Oseetah Capital, LLC ("Oseetah") (collectively the "Defendants"). (Doc. 13.)[1] Plaintiffs Roger Clint Bradshaw and Melissa Faye Bradshaw (collectively the "Plaintiffs") have filed suit against Defendants alleging a number of causes of action based on its furnishing allegedly false information to a credit reporting agency and/or failing to correct the false report. (Doc. 1 at ¶¶ 34-71.) Upon consideration of the record, Defendants' submission,[2] and the relevant law, the court

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2] Plaintiffs, who are proceeding *pro se*, did not file any opposition to Defendants' Joint Motion to Dismiss.

is of the opinion that Defendants' Motion is due to be granted in part and denied in part.

## I. MOTION TO DISMISS STANDARD

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993) (citations omitted); *see also Rivell v. Private Healthcare Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).

> The allegations in the complaint are taken as true and construed in the light most favorable to the plaintiffs. [*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002).] However, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, [545], 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir.2007). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, [550 U.S. at 556]). This rule does not "impose a probability requirement at the pleading stage." *Twombly*, [550 U.S. at 556]. Instead, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the required element. *Id*. "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [the element] plausible.'" *Watts*, 495 F.3d at 1296 (quoting *Twombly*, [550 U.S. at 556]).

*Rivell*, 520 F.3d at 1309.

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001) (quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte & Touche*, 144 F.3d

732, 735-736 (11th Cir. 1998) (citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts, taken primarily from the Complaint, (Doc. 1 at ¶¶ 9-31), and assumed as true for purposes of a motion to dismiss, are as follows:

Plaintiffs filed a voluntary Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Northern District of Alabama, Southern Division, on February 7, 2008. (*See* Doc. 1 at ¶ 10; Doc. 14, Ex. 1 at 1-3.) The bankruptcy court entered a discharge order on June 17, 2008 (the "§ 727 Discharge Order").[3] (Doc. 1 at ¶ 10; Doc. 14 at Ex. 2.)

Plaintiffs contend that Defendants "either receiv[ed] a copy of the discharge order, or receiv[ed] notice through their inquiry into Plaintiffs' credit reports," but nevertheless "continue to report Plaintiffs' accounts to one or more of the three national consumer reporting agencies (hereinafter referred to as 'CRAs') as having current balances due and payable rather than reflecting that such were discharged in bankruptcy." (Doc. 1 at ¶¶ 10-11.) Specifically, Plaintiffs allege that CBHV continues to display a balance of $253 on Roger Clint Bradshaw's Experian Information Solutions, Inc. ("Experian") report, and that Oseetah also continues to display a balance of $253 on Roger Clint Bradshaw's Experian report. (*Id.* at ¶ 11.)

---

[3] § 727 of the Bankruptcy Code provides the general rules for discharging a debtor's pre-petition debts in Chapter 7 cases. *See* 11 U.S.C. § 727.

3

Plaintiffs allege that "Defendants have intentionally and maliciously failed and/or refused to either accurately report the accounts as having been discharged in bankruptcy or notify the CRAs that such accounts have a zero balance as a result of being discharged in bankruptcy." (*Id.* at ¶ 12.) Plaintiffs argue that such a failure and/or refusal is based in part on Defendants' "policy and procedure to refuse to properly update credit reports of consumers . . . who have discharged their debts."[4] (*Id.* at ¶ 16.)

Plaintiffs assert that Defendants' actions and/or omissions violate the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Alabama Deceptive Trade Practices Act ("ADTPA"), as well as constitute negligent, reckless and wanton conduct, harassment, an invasion of privacy, defamation, and misrepresentation under the state law of Alabama. (*Id.* at ¶¶ 34-71.) And, as a result of Defendants' actions and/or omissions, Plaintiffs maintain their "credit reports, credit worthiness, and credit scores have been negatively impacted by the inaccurate reporting," and that Plaintiffs have consequently suffered "past and future monetary loss, past and future damage to Plaintiffs' credit and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the jury." (*Id.* at ¶¶ 13-14, 31.) For their claims, Plaintiffs seek actual and punitive damages, state and federal statutory damages, compensatory damages for mental and emotional distress, humiliation, and embarrassment, costs and

---

[4] Specifically, Plaintiffs assert that "Defendants have a policy to 'park' their accounts on at least one of the Plaintiffs' credit reports," meaning that Defendants "keep[] a false balance (or false account) on the credit report so that the consumer will be forced to pay off the balance in order to obtain refinancing, qualify for a loan, or increase the consumer's credit score." (Doc. 1 at ¶ 20.)

attorney's fees, as well as any other relief that the court deems just and proper. (*Id.* at 14-15.)

Following Plaintiffs' filing of their Complaint, the Supreme Court of Alabama, on July 9, 2009, suspended Plaintiffs' counsel from the practice of law for a period of three years. (*See* Doc. 11 at attached Order.) Accordingly, on July 28, 2009, the court entered an Order staying Plaintiffs' case until October 2, 2009 to allow Plaintiffs to retain substitute counsel. (*Id.* at 1.) The court's Order made clear that Plaintiffs were to notify the court, in writing, on or before October 2, 2009, as to the status of their employment of new counsel or they would each be deemed to be proceeding *pro se* and the case would proceed as such. (*Id.*) The court directed the Clerk of the Court to provide a copy of the Order, and the attached Order of the Supreme Court of Alabama, directly to Plaintiffs. (*Id.* at 1-2.)

During the stay, on August 4, 2009, Defendants filed their Joint Motion to Dismiss. (Doc. 13.) With their motion, Defendants also filed an accompanying Joint Memorandum of Law in Support of their Motion to Dismiss, attaching two exhibits.[5] (Doc. 14.)

Despite the court's July 28, 2009 Order, (Doc. 11), Plaintiffs failed to notify the court

---

[5] Although Defendants attached the two exhibits in support of a motion to dismiss under Rule 12(b)(6), which would generally require that the court convert the motion to one for summary judgment under Rule 56, *see* Fed. R. Civ. P. 12(d), both of Defendants' attached exhibits are copies of filings from the underlying bankruptcy action, undisputed in terms of authenticity, and central to Plaintiffs' claims, (*see* Doc. 14 at Exs. 1-2). For that reason, as Defendants correctly point out, (*id.* at 6 n.2), the court need not convert the motion to dismiss to one for summary judgment, *see, e.g.*, *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (noting that a court need not convert a Rule 12(b)(6) motion to dismiss to a motion for summary judgment when considering a document outside the four corners of the complaint if the document is "central to the plaintiff's claims and is undisputed in terms of authenticity" (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002))).

as to the status of their employment of new counsel. For that reason, the court deemed Plaintiffs to be proceeding *pro se* and, on October 7, 2009, entered a Submission Order on Defendants' Joint Motion to Dismiss, requiring that Plaintiffs file any opposition to the motion on or before October 26, 2009, and requiring that Defendants file any reply brief on or before November 9, 2009. (Doc. 15 at 1.) The court again directed the Clerk of the Court to provide a copy of the Order directly to Plaintiffs. (*Id.* at 1-2.) Plaintiffs did not file an opposition to the motion. Still, Defendants filed a reply on November 9, 2009. (Doc. 16.)

### III. DISCUSSION

Defendants maintain that Plaintiffs' Complaint is due to be dismissed "pursuant to Rule 12 of the Federal Rules of Civil Procedure . . . for failure to state a claim upon which relief can be granted and for lack of jurisdiction." (Doc. 13.) Specifically, Defendants argue that: (A) the Complaint fails to state a claim by Melissa Faye Bradshaw, (B) the Complaint fails to state a claim under the FDCPA, (C) this court lacks subject matter jurisdiction over all of Plaintiffs' claims, and (D) Plaintiffs' state law claims fail because they are preempted by the FCRA.[6] (Doc. 14 at 4-12.)

---

[6] In their reply brief, Defendants also argue that because Plaintiffs did not file an opposition to Defendants' Joint Motion to Dismiss, Plaintiffs failed to comply with the court's October 7, 2009 Submission Order; Defendants maintain that Plaintiffs' failure "provides an additional basis for dismissal" under Fed. R. Civ. P. 41(b). (*See* Doc. 16 at 1-2.) Rule 41(b) allows for involuntary dismissal for "fail[ure] to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b). As support for their argument, Defendants cite *Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir. 1999) (dismissing plaintiff's complaint because plaintiff failed to comply with court order that had required plaintiff to provide releases to

A.  **DEFENDANTS' ARGUMENT THAT THE COMPLAINT FAILS TO STATE A CLAIM BY MELISSA FAYE BRADSHAW**

Defendants first point out that "[t]he facts as alleged in the Complaint do not allege any negative credit reporting, or any credit reporting for that matter, relating to Plaintiff Melissa Faye Bradshaw." (Doc. 14 at 4.) Thus, Defendants argue that "as all of the causes of action are predicated upon accusations of negative credit reporting, these claims all fail as to Melissa Faye Bradshaw." (*Id.*) Defendants have not cited any authority in support.

To be sure, the Complaint alleges inaccurate information only with respect to Roger Clint Bradshaw's Experian report. (*See* Doc. 1 at ¶ 11.) However, it remains that "individuals other than the subject of a consumer report can have standing to bring a lawsuit [for inaccurate credit reporting]." *Barron v. Trans Union Corp.*, 82 F. Supp. 2d 1288, 1296 (M.D. Ala. 2000) (citing 15 U.S.C. § 1681a(d)) (holding that wife had standing to assert claim under the FCRA based on inaccuracy listed on husband's consumer report because mortgage company denied wife's loan application based on the report).[7] *See also Roybal v.*

---

defendants authorizing the production of plaintiff's medical records), and *Hudson v. Cardwell Corp.*, No. 04-0821-WS-M, 2006 WL 2135791, *2-3 (S.D. Ala. July 27, 2006) (dismissing *pro se* plaintiff's complaint because plaintiff failed to serve Rule 26(a)(1) disclosures to opposing counsel despite two court orders that warned plaintiff that failure to comply could and would result in dismissal of plaintiff's case). (Doc. 16 at 2.) In the instant case, the court's October 7, 2009 Submission Order did not require Plaintiffs to file an opposition to Defendants' motion, but instead merely set a deadline for such filing. (Doc. 15.) Therefore, unlike the cases relied on by Defendants, where the courts had ordered the plaintiffs to take affirmative action, this court has entered no such order. For that reason, Defendants' argument is unavailing.

[7] Under the FCRA, "[t]he term 'consumer report' means any . . . communication . . . bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." § 1681a(d)(1).

*Equifax*, No. 2:05-cv-01207-MCE-KJM, 2008 WL 4532447, at *5-6 (E.D. Cal. Oct. 9, 2008) (holding wife had standing to allege inaccurate credit reporting based on husband's credit report because report listed joint accounts); *see also Wiggins v. Equifax Servs., Inc.*, 848 F. Supp. 213, 226-27 (D.D.C. 1993) ("If a credit report refers and relates to both a husband and wife, both spouses would have standing to sue . . . .") (citation omitted).

Here, the Complaint alleges that Roger Clint Bradshaw's Experian report lists "*Plaintiffs'* accounts." (*See* Doc. 1 at ¶ 11 (emphasis added).) The Complaint also alleges that "*Plaintiffs'* . . . credit worthiness . . . and credit scores have been negatively impacted by the inaccurate reporting." (*Id.* at ¶ 13 (emphasis added).) Because these allegations are sufficient to confer standing on Melissa Faye Bradshaw, Defendants' argument to the contrary is without merit.

### B. DEFENDANTS' ARGUMENTS THAT THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FDCPA

Defendants next argue that Plaintiffs have failed to state a claim under the FDCPA because: (1) Plaintiffs failed to seek relief in the first instance in the bankruptcy court, and (2) there was no "knowing and intentional" violation of the FDCPA in this case. (Doc. 14 at 4-7.)

Regarding their first argument, Defendants maintain "[t]here has been no determination by the Bankruptcy Court of the violation of the bankruptcy discharge and stay by CBHV and Oseetah." (*Id.* at 5.) Accordingly, Defendants insist that "Plaintiffs lack the

requisite factual basis to sustain an FDCPA claim that is grounded upon a violation of the bankruptcy discharge and stay." (*Id.*) As support, Defendants rely on the United States Court of Appeals for the Second Circuit's decision in *Yaghobi v. Robinson*, 145 F. A'ppx 697, 699 (2d Cir. 2005) (unpublished). (*See* Doc. 14 at 4-5.)

In *Yaghobi v. Robinson*, the Second Circuit considered a district court's dismissal under Rule 12(b)(6), without prejudice, of a *pro se* plaintiff debtor's claims against two creditors, in which the debtor had alleged that the creditors wrongfully attempted to collect a debt in violation of the automatic injunction provided by § 524 of the Bankruptcy Code.[8] *See* 145 F. A'ppx at 698. Specifically, the debtor had alleged, *inter alia*, civil contempt under § 105(a) of the Bankruptcy Code,[9] as well as a violation of the FDCPA. *Id.* The Second Circuit stated that "[w]here . . . a debtor thinks a creditor is acting in violation of a bankruptcy court's § 524 discharge order, relief is properly sought in the first instance from the bankruptcy court 'rather than in the district court, which only has appellate jurisdiction over bankruptcy cases.'" *Id.* at 699 (quoting *E. Equip. & Servs. Corp. v. Factory Point Nat'l*

---

[8] § 524(a) of the Bankruptcy Code states in pertinent part that:

A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a).

[9] § 105(a) of the Bankruptcy Code states in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

*Bank*, 236 F.3d 117, 121 (2d Cir. 2001). The court therefore held that the debtor should have filed his § 105(a) civil contempt claim in the bankruptcy court, and consequently also concluded that:

> Because the bankruptcy court is the appropriate forum to determine whether a creditor has, in fact, violated a discharge order, a plaintiff debtor who, as in this case, fails to secure such a determination lacks a colorable factual basis to plead an unfair debt collection practice based only on a § 524 violation.

*Id.* As a result, the Second Circuit affirmed the district court's dismissal of the debtor's claims, noting the debtor could still seek relief in the bankruptcy court. *Id.*

Although *Yaghobi* involves similar facts to the instant case, this court nevertheless finds the Second Circuit's analysis to be unpersuasive.[10] Initially, it must be noted that while the Second Circuit purported to decide the case for failure to state a claim under Rule 12(b)(6), in reality it decided that district courts lack original jurisdiction under Rule 12(b)(1) to decide certain claims that necessarily require a determination that a creditor violated a bankruptcy court's discharge order. *See Yaghobi*, 145 F. App'x at 699. And, while the United States Court of Appeals for the Eleventh Circuit has not decided this precise issue, it has discussed a district court's threshold jurisdictional power to adjudicate claims arising under or related to the Bankruptcy Code. *See Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005), *cited with approval in Mays v. Chase Manhattan Mortgage*

---

[10] Accordingly, the court likewise finds the district court case cited by Defendants, *Jones v. Palisades Collection, LLC*, No. 3:06cv1439, 2008 WL 762121, at *2 (D. Conn. March 19, 2008), *vacated on other grounds*, 2008 WL 2468530 (D. Conn. May 7, 2008) (unpublished), which relied solely on *Yaghobi* in dismissing a debtor's FDCPA claim, to be unpersuasive as well. *See* 2008 WL 2468530 at *2. (*See* Doc. 14 at 4-5.)

*Corp.*, 180 F. App'x 143, 144 (11th Cir. 2006).

Indeed, in *Justice Cometh*, the district court had dismissed a debtor's claim that creditors willfully violated the automatic stay provision of the Bankruptcy Code, i.e. § 362,[11] by selling real property subject to the stay at a foreclosure sale.[12] 426 F.3d at 1342-43. The district court had concluded that it lacked subject matter jurisdiction over the case and that the debtor should have filed her claim in the bankruptcy court. *See id.* On appeal, citing 28 U.S.C. § 1334,[13] the Eleventh Circuit reversed the district court's decision, pointing out that "the explicit § 1334 grant of *original* jurisdiction over Title 11 cases clearly forecloses a conclusion that the district court lacked subject matter jurisdiction over this case." *Id.* at 1343 (citing *Price v. Rochford*, 947 F.2d 829, 832 n.1 (7th Cir. 1991)). What's more, the

---

[11] As stated in *Justice Cometh*, "[t]he filing of a bankruptcy petition pursuant to Title 11 operates to automatically stay creditors from pursing certain specified collection actions against the debtor or estate." 426 F.3d at 1343 (citing 11 U.S.C. § 362(a)). Subsection (k)(1) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay . . . shall recover . . . damages." § 362(k)(1).

[12] It is relevant to note that while the creditors sold the real property during the automatic stay period, the debtor filed suit in district court after the dismissal of her bankruptcy case. *Justice Cometh*, 426 F.3d at 1343 n.1.

[13] § 1334 states in pertinent part that:

**(a)** Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

**(b)** Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a)-(b).

Eleventh Circuit also stated:

> We acknowledge that the Second Circuit has held to the contrary. *See Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank*, 236 F.3d 117 (2d Cir. 2001) (holding that § 362(h) claim "must be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases"). However, *Eastern Equipment* makes no mention of the grant of original jurisdiction in 28 U.S.C. § 1334, and provides no explanation as to why § 1334 would not apply. Because we find that statutory provision controlling, we consider the Seventh Circuit's *Price* decision more persuasive, and join in finding that the district courts have subject matter jurisdiction to adjudicate § 362(h) claims.

*Id.* at 1343 n.2. To be sure, the Second Circuit, in deciding *Yaghobi*, primarily relied on its earlier decision in *Eastern Equipment & Services Corp. v. Factory Point National Bank*. *See Yaghobi*, 145 F. App'x at 699. For these reasons, the court finds Defendants' reliance on *Yaghobi* to be unavailing.

For their second argument, Defendants contend that "[a] number of courts have read into § 1692e a 'knowing and intentional' standard that must be proven by the plaintiff before imposing liability on a debt collector under this subsection." (Doc. 14 at 6.) Citing the Plaintiffs' voluntary Chapter 7 bankruptcy petition, Defendants point out that "neither CBHV nor Oseetah were listed as creditors in the bankruptcy, on any mailing matrix, and were not mailed notice of the discharge," and for that reason Defendants maintain "[t]here are not any factual allegations in the Complaint that support conclusory allegations that CBHV or Oseetah acted in an intentional and knowing manner." (*Id.*)

Defendants' second argument is wholly without merit. Simply put, "'[t]he FDCPA establishes a strict liability standard; a consumer need not show [an] intentional violation of the Act by a debt collector to be entitled to damages.'" *Chalik v. Westport Recovery Corp.*,

12

No. 09-60819-CIV, 2009 WL 5191422, at *3 (S.D. Fla. Oct. 30, 2009) (citing *Castro v. A.R.S. Nat'l Servs., Inc.*, No. 99 CIV 4596(HB), 2000 WL 264310, at *2 (S.D.N.Y. Mar. 8, 2000)); *see also Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (3d Cir. 2003) ("Although [the defendant] was unaware of the bankruptcy, under § 1692e *ignorance is no excuse*. . . . § 1692e applies even when a false representation was unintentional.") (emphasis added) (citation omitted); *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").[14]

In the instant case, for purposes of this motion to dismiss, the court assumes as true Plaintiffs' allegations that Defendants are "'debt collectors' as defined by and within the meaning of the FDCPA, 15 U.S.C. 1692a(6),"[15] and that, *inter alia*, Defendants "attempt[ed] to collect a debt [subject to the 727 Discharge Order] by reporting a balance [on Roger Clint Bradshaw's Experian report]," and also "[f]ail[ed] to show the accounts as being 'disputed' by Plaintiffs." (*See* Doc. 1 at ¶¶ 10-11, 35.) These allegations are sufficient to state a claim under the plain language of the FDCPA. *See* 15 U.S.C. § 1692e(2)(A), (8); *see also Williams v. Sears, Roebuck & Co.* (*In re Williams*), 244 B.R. 858, 862, 866-67 (S.D. Ga. 2000), *aff'd mem.*, 34 F. App'x 967 (11th Cir. 2002) (assuming class members' allegations to be true for

---

[14] Moreover, Defendants' proffered interpretation would seemingly render meaningless the second and third prongs of the FDCPA's "bona fide error" affirmative defense. *See* 15 U.S.C. 1692k(c); *see also Edwards v. Niagra Credit Solutions, Inc.*, 584 F.3d 1350, 1352-53 (11t h Cir. 2009) (listing the elements of the bona fide error defense).

[15] Defendants have not disputed that they are debt collectors. (*See* Doc. 14; Doc. 16.)

purposes of motion to dismiss that defendant department store violated 11 U.S.C. § 524 discharge injunction, and retaining jurisdiction to decide § 105 civil contempt claims of all class members who obtained the injunction in bankruptcy court located in same district as district court). As a result, Defendants' Joint Motion to Dismiss Plaintiffs' claims under the FDCPA for failure to state claims upon which relief can be granted is due to be denied.

### C. DEFENDANTS' ARGUMENT THAT THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER ALL OF PLAINTIFFS' CLAIMS

Defendants maintain that "[a]ll the claims in this action in any event are wholly preempted by bankruptcy law. Accordingly, Plaintiffs' only recourse is to seek redress through the bankruptcy court for violation of the bankruptcy stay as this Court lacks subject matter jurisdiction in this case." (Doc. 14 at 7.) As the basis for their argument, Defendants rely solely on the United States Court of Appeals for the Ninth Circuit's opinion in *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 511 (9th Cir. 2002). (Doc. 14 at 7-9.) In *Walls*, the Ninth Circuit initially held that § 524 of the Bankruptcy Code did not provide a private right of action because "[t]he Bankruptcy Code provide[d] its own remedy for violating § 524, civil contempt under § 105." 276 F.3d at 510. The Ninth Circuit then pointed out that "[the plaintiff debtor's] FDCPA claim [was] based on an alleged violation of § 524." *Id.* Consequently, the Ninth Circuit concluded that "[t]o permit a simultaneous claim under the FDCPA would allow through the back door what [the plaintiff debtor] cannot accomplish through the front door-a private right of action." *Id.* Therefore, the Ninth Circuit held that

14

the Bankruptcy Code precluded the plaintiff debtor's FDCPA claim, and affirmed the district court's dismissal of the claim. *Id.* at 511.

On the other hand, as Defendants acknowledge, (Doc. 14 at 7-8 & n.3), the United States Court of Appeals for the Seventh Circuit has rejected *Walls*, holding instead that "[t]he Bankruptcy Code of 1986 does not work an implied repeal of the FDCPA," *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Still, Defendants note that the Eleventh Circuit has not addressed the issue, and therefore argue that the court should follow *Walls* rather than *Randolph*. (Doc. 14 at 7-8 & n.3.) The court declines.

Particularly, as other district courts have likewise recognized, *see, e.g.*, *Drnavich v. Calvary Portfolio Serv.*, LLC, No. Civ. 05-1022 PAMRLE, 2005 WL 2406030 at *2 (D. Minn. Sept. 29, 2005), the Ninth Circuit did not identify "a clearly expressed congressional intention" that the Bankruptcy Code preempts the FDCPA, or an "irreconcilable conflict" between the two federal statutes, yet one of these two is necessary for repeal by implication, *see Branch v. Smith*, 538 U.S. 254, 273 (2003) ("[A]bsent 'a clearly expressed congressional intention,' 'repeals by implication are not favored.' An implied repeal will only be found where provisions in two statutes are in 'irreconcilable conflict,' or where the latter Act covers the whole subject of the earlier one and 'is clearly intended as a substitute.'") (internal citations omitted); *Randolph*, 368 F.3d at 730, 733. By contrast, the Seventh Circuit directly addressed how one federal statute implicitly repeals another, finding nothing to suggest an implied repeal of the FDCPA. *See Randolph*, 368 F.3d at 730-33 ("It is easy to enforce both

15

statutes, and any debt collector can comply with both simultaneously.").

Here, Defendants have likewise failed to cite a clearly expressed congressional intention that the Bankruptcy Code preempts the FDCPA and/or FCRA, or identify an irreconcilable conflict between the statutes. (*See* Doc. 14 at 7-9.) As a result, because the court agrees with the Seventh Circuit's thorough and well-reasoned decision in *Randolph*, the court finds Defendants' argument that the Bankruptcy Code preempts Plaintiffs' federal causes of action to be unavailing.[16] Defendants' Joint Motion to Dismiss for lack of subject matter jurisdiction as to Plaintiffs' FDCPA and FCRA claims is therefore due to be denied.

### D. DEFENDANTS' ARGUMENT THAT PLAINTIFFS' STATE LAW CLAIMS FAIL BECAUSE THEY ARE PREEMPTED BY THE FCRA

Lastly, Defendants argue that "Plaintiffs' state law claims are preempted and precluded by the [FCRA]" under § 1681t(b)(1)(F), as they are "based upon alleged inaccurate credit reporting by a 'furnisher of information.'" (Doc. 14 at 9-10 (citations omitted).)

§ 1681h(e) states:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse

---

[16] Because the court finds that the FCRA preempts Plaintiffs' state law claims, it is unnecessary to address whether the Bankruptcy Code also preempts Plaintiffs' state law claims. *See infra* Part III.D.

> action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (footnote omitted). The three sections covered by § 1681h(e), i.e. § 1681g, § 1681h, and § 1681m, regulate disclosures to consumers and duties of users of information. These sections do not concern a furnisher's duties of reporting and investigation. Instead, § 1681t(b) covers furnishers.

§ 1681t(b)(1) provides in part that:

No requirement or prohibition may be imposed under the laws of any State–

> **(1)** with respect to any subject matter regulated under–
>
> . . .
>
> > **(F)** section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

§ 1681t(b)(1)(F). In a similar case in the Middle District of Alabama, Senior District Judge Albritton, discussing the plain language of § 1681h(e) and § 1681t(b)(1), held that state law claims based on conduct prohibited by § 1681s-2 are preempted by the plain language of § 1681t(b)(1)(F):

> Many district courts which have examined these two statutes [§ 1681h(e) and § 1681t(b)(1)(F)] have attempted to resolve a perceived conflict between them by following one of three lines of reasoning: [1] the view that § 1681t(b)(1)(F) completely subsumes § 1681h, *see e.g., Hasvold v. First USA Bank*, 194 F. Supp. 2d 1228, 1239 (D. Wyo. 2002); [2] the view that § 1681(b)(1)(F) only preempts claims arising after the furnisher of information has been provided notice, *see e.g., Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316, 1324 (S.D. Ala. 2002); and [3] the view that § 1681h applies to common law tort claims and § 1681t(b)(1)(F) to state statutory claims, *see, e.g., McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335 (N.D. Ala. 2004). Another judge of this court, however, has determined that those three approaches need not be followed to resolve the issue of preemption and that the

> plain language of § 1681t(b)(1)(F) controls. *Abbett v. Bank of America*, No. 3:04cv1102-WKW, 2006 WL 581193 (M.D. Ala. March 8, 2006)(Watkins, J.).
>
> In construing a statute, the court must first look to the plain language of the statute. *See Albernaz v. United States*, 450 U.S. 333, 336, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981). [The plaintiff] argues that the language of § 1681h(e) and § 1681t(b)(1)(F) conflict, and that this court should resolve that conflict and determine that his tort claims are not preempted because he alleges malice and willful intent, consistent with the exception in § 1681h(e).
>
> The court finds there is no ambiguity in § 1681t(b)(1)(F) on its face. It does not allow for state law prohibitions or requirements which relate to the responsibilities of furnishers of information to consumer reporting agencies. It appears to this court that § 1681h(e) should only be looked to to determine whether it conflicts with the plain language of § 1681t(b)(1)(F) if § 1681h(e) is otherwise applicable in the case. That is, this court should not undertake to resolve a theoretical conflict between statutes unless the statute which allegedly causes the conflict with the other, unambiguous, statute applies in the case.
>
> [The defendant] has argued that § 1681h(e) has no applicability in this case because [the plaintiff's] claims do not fall within the categories of actions identified in § 1681h(e). As set out above, § 1681h(e) limits, with exceptions, the scope of the immunity it provides to particular kinds of claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report . . . ." Sections 1681g and 1681h of the FCRA set out requirements of consumer reporting agencies in their disclosures to consumers. Section 1681m, as well as the remaining language of 1681h(e), apply to users of information which take adverse action against the consumer. [The plaintiff] has not alleged that [the defendant] is a consumer reporting agency or that it took adverse action against him. Accordingly, § 1681h(e) is not applicable to the facts of this case and the liability limitation, and exceptions thereto, likewise are not applicable. Because those provisions do not apply, the court finds no conflict to be resolved with the plain language of § 1681t(b)(1)(F).

*Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1259-60 (M.D. Ala. 2007) (footnotes omitted).

In this case, Plaintiffs have not alleged that Defendants are "consumer reporting agenc[ies] or that [they] took adverse action against [them based on information provided by

18

a consumer reporting agency]." *See id.* at 1260. Moreover, the information at issue, the alleged debt to Defendants, is neither information disclosed pursuant to §§ 1681g, 1681h, and/or 1681m, nor information disclosed by Defendants as users of a consumer report. Under these circumstances, § 1681h(e) does not preserve Plaintiffs' state law claims against Defendants as furnishers of information.

Section 1681t(b)(1)(F) provides that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ." § 1681t(b)(1)(F). The subject matter under § 1681s-2 includes a prohibition against furnishers providing "any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *See* § 1681s-2(a)(1).

Plaintiffs allege that "Defendants have intentionally and maliciously failed and/or refused to either accurately report the accounts as having been discharged in bankruptcy or notify the CRAs that such accounts have a zero balance as a result of being discharged in bankruptcy." (Doc. 1 at ¶ 12.) This conduct is the subject matter of § 1681s-2. Thus, Plaintiff's state law claims are barred by § 1681t(b)(1)(F). Defendants' Joint Motion to Dismiss with regards to Plaintiffs' state law claims is therefore due to be granted and Plaintiffs' state law claims are due to be dismissed.

19

## IV. **CONCLUSION**

For the foregoing reasons, the court is of the opinion that Defendants' Joint Motion to Dismiss, (Doc. 13), is due to be granted in part and denied in part. Plaintiffs' state law claims are due to be dismissed. Defendants' Joint Motion to Dismiss is due to be denied as to Plaintiffs' remaining claims under the FDCPA and FCRA. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

The Clerk of the Court is **DIRECTED** to provide a copy of this Memorandum Opinion to plaintiffs at the following addresses:

>Roger Clint Bradshaw
>20611 Highway 195
>Double Springs, Alabama 35553

>Melissa Faye Bradshaw
>20611 Highway 195
>Double Springs, Alabama 35553

**DONE**, this 29th day of March, 2010.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE